**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

**OSF INTERNATIONAL, INC.,**

$\qquad\qquad\qquad\qquad$ **Plaintiff,**

$\qquad$ **vs.** $\qquad\qquad\qquad\qquad\qquad\qquad$ **6:23-CV-00013**
$\qquad\qquad\qquad\qquad\qquad\qquad\qquad\qquad\qquad$ **(MAD/TWD)**

**JASON SPELLICY, AMANDA SPELLICY,**
**ESTIMATED PROFITS, LLC, and JACS**
**GRATEFUL PASTA, LLC,**

$\qquad\qquad\qquad\qquad\qquad$ **Defendants.**

_____

**APPEARANCES:** $\qquad\qquad\qquad\qquad$ **OF COUNSEL:**

**LEE PALMATEER LAW OFFICE, LLC** $\qquad$ **LEE PALMATEER, ESQ.**
41 State Street - Suite 604-20
Albany, New York 12207
Attorneys for Plaintiff

**HANCOCK ESTABROOK, LLP** $\qquad\qquad$ **JAMES P. YOUNGS, ESQ.**
1800 AXA Tower 1
100 Madison Street
Syracuse, New York 13202
Attorneys for Defendants

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

On January 4, 2023, Plaintiff OSF International, Inc. ("Plaintiff" or "OSF") commenced this trademark dispute action against Defendants Jason Spellicy, Amanda Spellicy, Estimated Profits, LLC, and JACS Grateful Pasta, LLC (collectively "Defendants"). *See* Dkt. No. 1. Plaintiff asserts several statutory causes of action under the federal Lanham Act and the New York General Business Law. Dkt. No. 22 at ¶¶ 87-115, 120-133. Plaintiff also asserts a claim for unfair competition under New York common law. *See id.* at ¶¶ 116-119. Currently pending before the Court is Defendants' motion pursuant to Rule 12(b)(6) of the Federal Rules of Civil

Procedure seeking partial dismissal of the amended complaint. *See* Dkt. No. 23. Plaintiff has

filed an opposition to the motion and Defendants have replied. *See* Dkt. Nos. 24 and 25. For the

reasons set forth below, Defendants' motion is granted in part and denied in part.

## II. BACKGROUND

According to the amended complaint, Plaintiff is an Oregon-based corporation that "has

exclusive trademark rights to the mark and name THE OLD SPAGHETTI FACTORY®" ("the

Mark") "for use in connection with restaurant services and related goods and services." Dkt. No.

22 at ¶¶ 1, 15. Plaintiff "owns U.S. Trademark Registration No. 942108 for use of the Mark for

restaurant services, which registration was issued on August 29, 1972 based on Application Serial

No. 72354761 filed with the U.S. Patent and Trademark Office on March 23, 1970." *Id.* at ¶ 16.

Plaintiff first opened a restaurant in Oregon "and has a history of expansion throughout the

western United States and across the country." *Id.* at ¶ 22. Currently, Plaintiff owns and operates

over forty restaurants in thirteen states, including Hawaii, Washington, Oregon, California,

Arizona, Utah, Colorado, Kansas, Oklahoma, Missouri, Kentucky, Indiana, and Ohio. *See id.*

Previously, Plaintiff has operated and owned restaurants in Nevada, Idaho, Minnesota, Tennessee,

Georgia, North Carolina, and Massachusetts. *See id.* Plaintiff "also has two licensed locations

operating in Japan." *Id.*

Plaintiff's "market territory in the United States is nationwide, including New York State."

Dkt. No. 22 at ¶ 23. Plaintiff "serves patrons from New York State on a regular basis, advertises

in New York State, and considers New York State to be a prospective location for an OSF

restaurant." *Id.* at ¶ 24. Indeed, according to Plaintiff, "OSF's restaurants serve roughly 8 million

customers annually and have served well in excess of 100 million customers over the last 20 years

alone." *Id.* at ¶ 25.

2

For decades, Plaintiff "has engaged in a continuous and extensive advertising and marketing campaign for its THE OLD SPAGHETTI FACTORY restaurants" and maintains "an annual advertising and marketing budget in excess of one million dollars." Dkt. No. 22 at ¶ 27. Plaintiff "displays the Mark prominently and extensively on exterior restaurant signage, menus, its website *www.osf.com*, other social media, and a wide range of other advertising media and marketing channels." *Id.* at ¶ 26. In a recent online publication, "*Restaurant Business Online* ranked OSF in the top 500 restaurant chains by revenues, ahead of other famous restaurant chains[.]" *Id.* at ¶ 29. Furthermore, the Mark "has attained elevated status in American popular culture, including in a Saturday Night Live skit broadcasted nationally in 2007[,] . . . in which THE OLD SPAGHETTI FACTORY restaurant was mentioned several times by name as a place where one of the characters wanted to take another for dinner as a theme throughout the skit." *Id.* at ¶ 30.

According to Plaintiff, Defendant JACS Grateful Pasta, LLC ("Defendant JACS") has "adopted the mark and name THE SPAGHETTI FACTORY for use in connection with its own restaurant in interstate commerce in the United States." Dkt. No. 22 at ¶ 36. Plaintiff believes that "Defendant JACS began using THE SPAGHETTI FACTORY as a trademark for its restaurant in Verona Beach, New York in 2019 and has continue [sic] such use since that time." *Id.* at ¶ 59. Defendant JACS also "holds a New York State liquor license for the restaurant and operates the restaurant." *Id.* at ¶ 37. Plaintiff believes that Defendant Estimated Profits, LLC ("Defendant Profits"), "owns the real estate and restaurant building[.]" *Id.*

Moreover, Plaintiff believes that Defendants Jason Spellicy and Amanda Spellicy have "jointly participated in, directed, authorized and approved, at their exclusive discretion and control and for their mutual profit, all conduct of Defendants PROFITS and JACS[.]" Dkt. No.

22 at ¶ 38.  Plaintiff believes that the Spellicy Defendants jointly "agreed to purchase a restaurant located at 6800 Route 13, Verona Beach, New York 13162 with intent to operate it under the name THE SPAGHETTI FACTORY, and subsequently did so." *Id.* at ¶ 41.  Furthermore, "Defendant Jason Spellicy holds himself out publicly as the owner[,] . . . and has been identified as the owner [] in public media, including newspapers and radio station broadcasts." *Id.* at ¶ 53.  Plaintiff believes that "Defendant JACS prominently displays THE SPAGHETTI FACTORY trademark to identify and promote the restaurant on an outdoor sign[,] . . . on menus, on the websites *www.thespaghettifactoryrestaurant.com* and *www.spaghetti1978.com*, on the Facebook page *SpaghettiFactoryVB*, and other social media, all in interstate commerce." *Id.* at ¶ 63.

The amended complaint sets forth eight causes of action: (1) trademark infringement in violation of 15 U.S.C. § 1114(1)(a) and (b); (2) false designation of origin, false descriptions, and unfair competition in violation of 15 U.S.C. § 1125(a); (3) trademark dilution in violation of 15 U.S.C. § 1125(c); (4) cyberpiracy in violation of 15 U.S.C. § 1125(d); (5) "unfair competition"; (6) deceiving or misleading the public in violation of N.Y. Gen. Bus. L. § 133 "and similar laws of other states"; (7) false advertising in violation of N.Y. Gen. Bus. L. §§ 349 and 350 (and similar laws of other states); and (8) violation of N.Y. Gen. Bus. L. § 360-1.  Dkt. No. 22 at ¶¶ 87-133.  In the pending motion, Defendants seek dismissal of the Second, Third, Fifth, Seventh, and Eighth Causes of Action.  *See* Dkt. No. 23.

As to Plaintiff's requested relief, the amended complaint seeks "an injunction against Defendants . . . from using 'THE SPAGHETTI FACTORY' or any similar term that is likely to violate Plaintiff's common law rights or statutory rights[.]"  Dkt. No. 22 at 20-21.  Plaintiff also seeks monetary damages reflecting "all gains, profits, and advantages realized from the sale of goods and services in connection with the infringing marks"; "actual damages sustained by

Plaintiff"; and "treble damages and reasonable attorney fees pursuant to § 35 of the Lanham Act,

15 U.S.C. § 1117[,] and § 349 of the New York General Business Law." *Id.* at 20.  Plaintiff

requests additional statutory damages under the Lanham Act "in the amount of $200,000 per

counterfeit mark per type of goods or services[,] . . . or $2,000,000 . . . for willful use of a

counterfeit mark[.]" *Id.*  Finally, Plaintiff seeks an order from the Court directing Defendants to

"deliver up for destruction" all uses of the Mark.  *Id.*

### III. DISCUSSION

**A.    Standard of Review**

 A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) tests the legal

sufficiency of the party's claim for relief.  *See Patane v. Clark*, 508 F.3d 106, 111-12 (2d Cir.

2007) (citation omitted).  In considering the legal sufficiency, a court must accept as true all well-

pleaded facts in the pleading and draw all reasonable inferences in the pleader's favor.  *See ATSI*

*Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (citation omitted).  This

presumption of truth, however, does not extend to legal conclusions.  *See Ashcroft v. Iqbal*, 556

U.S. 662, 679 (2009) (citation omitted).  Although a court's review of a motion to dismiss is

generally limited to the facts presented in the pleading, the court may consider documents that are

"integral" to that pleading, even if they are neither physically attached to, nor incorporated by

reference into, the pleading.  *Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006)

(quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002)).

 To survive a motion to dismiss, a party need only plead "a short and plain statement of the

claim," Fed. R. Civ. P. 8(a)(2), with sufficient factual "heft to 'sho[w] that the pleader is entitled

to relief.'"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (citation omitted).  Under this

standard, the pleading's "[f]actual allegations must be enough to raise a right of relief above the

speculative level," *see id.* at 555 (citation omitted), and present claims that are "plausible on

[their] face," *id.* at 570.  "The plausibility standard is not akin to a 'probability requirement,' but it

asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at

678 (citation omitted).  "Where a complaint pleads facts that are 'merely consistent with' a

defendant's liability, it 'stops short of the line between possibility and plausibility of the

'entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).  Ultimately, "when the allegations

in a complaint, however true, could not raise a claim of entitlement to relief," *Twombly*, 550 U.S.

at 558, or where a plaintiff has "not nudged [its] claims across the line from conceivable to

plausible, the [] complaint must be dismissed[,]" *id.* at 570.

**B.    False Designation of Origin, False Descriptions, and Unfair Competition
        15 U.S.C. § 1125(a) – Second Cause of Action**

The Lanham Act prohibits any person "in commercial advertising or promotion, [from]

misrepresent[ing] the nature, characteristics, qualities, or geographic origin of his or her or

another person's goods, services, or commercial activities[.]" 15 U.S.C. § 1125(a)(1)(B).  Section

43(a) of the Act (15 U.S.C. § 1125(a)), "provides for two distinct causes of action: false

designation of origin or source, known as 'product infringement,' and false description or

representation, known as 'false advertising.'" *Res. Developers, Inc. v. Statue of Liberty–Ellis

Island Found., Inc.*, 926 F.2d 134, 139 (2d Cir. 1991) (quoting *Johnson & Johnson v. Carter-

Wallace, Inc.*, 631 F.2d 186, 188 (2d Cir. 1980)).  Both false designation of origin and false

description claims under 15 U.S.C. § 1125(a)(1) bear resemblance to trademark infringement

under 15 U.S.C. § 1114 because they require the plaintiff to "demonstrate that it has a valid mark

entitled to protection and that the defendant's use of it is likely to cause confusion." *Time, Inc. v.

Peterson Pub. Co. L.L.C.*, 173 F.3d 113, 117 (2d Cir. 1999) (citations and internal quotations

omitted).

6

That said, to state a claim for "false designation of origin," the "'plaintiff must allege that [i] goods or services are involved, [ii] interstate commerce is affected, and [iii] there is a false designation of origin . . . with respect to those goods or services in commerce.'" *Pulse Creations, Inc. v. Vesture Group, Inc.*, 154 F. Supp. 3d 48, 56-57 (S.D.N.Y. 2015) (quoting *Sun Trading Distrib. Co. v. Evidence Music, Inc.*, 980 F. Supp. 722, 727 (S.D.N.Y. 1997)).  To state a claim for false advertising or false description, a plaintiff must plausibly allege that the defendant "misrepresented an inherent quality or characteristic of the product," that the false statement was made in interstate commerce, and that the plaintiff was injured.  *See Merck Eprova AG v. Gnosis S.p.A.*, 760 F.3d 247, 255 (2d Cir. 2014)).  In either case, "[f]alseness may be established through one of two means: 'that the challenged advertisement is literally false, *i.e.*, false on its face, or that the advertisement, while not literally false, is nevertheless likely to mislead or confuse consumers.'"  *Weight Watchers International, Inc. v. Noom, Inc.*, 403 F. Supp. 3d 361, 369 (S.D.N.Y. 2019) (quoting *Tiffany (NJ) Inc. v. eBay Inc.*, 600 F.3d 93, 112 (2d Cir. 2010)) (citation and internal quotations omitted); *see also Time Warner Cable, Inc. v. DIRECTV, Inc.*, 497 F.3d 144, 153 (2d Cir. 2007).

Notably, "under Section 43 of the Act, there is no specific Federal cause of action for unfair competition.  Instead unfair competition under the Lanham Act is a category of claims consisting primarily of causes of action for false designation of origin and false advertising." *Sussman-Automatic Corp. v. Spa World Corp.*, 15 F. Supp. 3d 258, 272 (E.D.N.Y. 2014) (citations and internal quotations omitted).  As such, courts have dismissed as duplicative claims of unfair competition brought separately under the Lanham Act.  *See id.* at 273; *Tactica Int'l, Inc. v. Atl. Horizon Int'l, Inc.*, 154 F. Supp. 2d 586, 597 n.14 (S.D.N.Y. 2001); *see also Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 29 (2003) (noting that "[b]ecause of its

inherently limited wording, § 43(a) can never be a federal 'codification' of the overall law of 'unfair competition,' . . . but can apply only to certain unfair trade practices prohibited by its text") (citation omitted).

Defendants argue that Plaintiff's Second Cause of Action is "wholly duplicative of its trademark infringement claim," *i.e.*, the First Cause of Action.  Dkt. No. 23-2 at 24. Notwithstanding, Defendants argue that Plaintiff "has failed to allege that it has suffered a cognizable injury under the false advertising provision of the Lanham Act." *Id.* at 22. Defendants state that Plaintiffs's "rote, boilerplate assertion that it has been 'deprived of revenue'" fails when viewed in the context of the amended complaint's remaining allegations. *Id.* Defendants state that "[i]t is preposterous on its face to claim that consumers have been diverted away from OSF's restaurants, which operate in far-flung states outside of New York, by one small restaurant located in Verona Beach, New York." *Id.*  at 25.  Additionally, Defendants assert that, according to the complaint, their "use of the offending mark on the internet and Facebook constitutes a statement implying a connection between the Plaintiff and the Defendants or attempting to deceive consumers as to the source of the Defendants' goods[.]" *Id.* at 24.  However, Defendants state that "those allegations do nothing more than assert a likelihood of confusion and do no identify a separate statement as necessary to sustain a false advertising claim." *Id.*

In response, Plaintiff argues that the Second Cause of Action "states a claim for unfair competition and false advertising under § 43(a) of the Lanham Act." Dkt. No. 24 at 13.  Plaintiff asserts that "Defendants do not challenge OSF's claim for unfair competition" under the Lanham Act, and thus that claim "cannot be dismissed." *Id.*  Nonetheless, Plaintiff goes on to state that "[t]he claim elements for unfair competition under § 43(a) Lanham Act (15 U.S.C. § 1125(a)(1)) are the same as for trademark infringement under § 32 (15 U.S.C. § 1114), namely: (1) plaintiff

has a valid mark entitled to protection under the Lanham Act; and (2) defendant's use of the mark is likely to cause consumers confusion as to the origin or sponsorship of the defendant's goods." *Id.* (citations omitted). Plaintiff asserts that the Mark is a registered trademark granting it "incontestable, exclusive rights," and that "Defendants' use of THE SPAGHETTI FACTORY causes likelihood of confusion." *Id.* at 13-14.

The Court notes that there is apparently some discord as to the claims that Plaintiff has asserted and the claims that Defendants seek to dismiss. For instance, Plaintiff states that "Defendants move to dismiss OSF's Second Claim in part, only as it relates to false advertising[,]" and that "Defendants do not challenge the OSF's claim for unfair competition under § 43(a)(1)(A)[,]" before going on to argue the merits of the "unfair competition" claim and its claim for "federal trademark infringement," *i.e.*, the First Cause of Action — without specifically addressing either "false advertising" or "false origin." Dkt. No. 24 at 13-15. Naturally, Defendants have jumped on this in their reply brief insofar as they assert that "OSF states that its Second Claim does ***not*** assert a false advertising claim under § 43(a)(1)(B) of the Lanham Act, but rather only asserts an unfair competition claim under § 43(a)(1)(A)." Dkt. No. 25 at 9 (emphasis in original). According to Defendants, Plaintiff has "acknowledge[d] that its Second Claim is for unfair competition, not false advertising, and thus wholly duplicative of its trademark infringement claim." *Id.*

Herein, the Court construes Defendants' motion as seeking complete dismissal of the Second Cause of Action, which is subtitled in the amended complaint as "[f]alse designation of origin, false descriptions and Unfair Competition in violation of 15 U.S.C. § 1125(a)." *See* Dkt. No. 22 at ¶¶ 92-98. In the Court's view, Plaintiff has adequately alleged a claim under both theories. Plaintiff has plausibly demonstrated that it has a valid mark entitled to protection and

that Defendants' use of the Mark is likely to cause confusion.  As to the falsity element, the Court finds that there are facts plausibly alleging that Defendants' business advertisements — while not literally false — have the likelihood to mislead or confuse consumers into believing that the Verona Beach restaurant in New York has some connection with Plaintiff's nationwide chain of restaurants.  However, to the extent the amended complaint asserts a standalone cause of action for unfair competition under the Lanham Act, such a claim must be dismissed as duplicative of the federal trademark infringement claim, *i.e.*, First Cause of Action.  *See Sussman-Automatic Corp. v. Spa World Corp.*, 15 F. Supp. 3d 258, 273 (E.D.N.Y. 2014) (dismissing the plaintiff's unfair competition claim under the Lanham Act as duplicative of the plaintiff's trademark infringement and false advertising claims) (citation omitted).

Accordingly, Defendants' motion to dismiss the Second Cause of Action is granted, in part, and denied, in part.

## C.      Trademark Dilution 15 U.S.C. § 1125(c) – Third Cause of Action

"Federal law allows the owner of a 'famous mark' to enjoin a person from using 'a mark or trade name in commerce that is likely to cause dilution by blurring or dilution by tarnishment.'" *Tiffany (NJ) Inc. v. eBay Inc.*, 600 F.3d 93, 110-11 (2d Cir. 2010) (quoting 15 U.S.C. § 1125(c)(1)).  Where the defendant "willfully intended to trade on the owner's reputation or to cause dilution of the famous mark[,]" the owner may also be entitled to monetary relief.  *See* 15 U.S.C. § 1125(c)(2).  To establish entitlement to relief, a plaintiff must establish the following: "'(1) its mark is famous; (2) the defendant is making commercial use of the mark in commerce; (3) the defendant's use began after the mark became famous; and (4) the defendant's use of the mark dilutes the quality of the mark by diminishing the capacity of the mark to identify and

distinguish goods and services.'"  *Louis Vuitton Malletier v. Dooney & Bourke, Inc.*, 454 F.3d 108, 118 (2d Cir. 2008) (quotation omitted).

Defendants argue that Plaintiff's trademark dilution claim fails because "OSF's Trademark is neither 'famous' nor 'distinctive.'"  Dkt. No. 23-2 at 11.  Defendants state that "allegations that it is one of the 'top 500 restaurant chains by revenues' and was referenced one time in a skit on Saturday Night Live 16 years ago fall woefully short of the allegations necessary[.]"  *Id.* at 14. Defendants assert that Plaintiff "admits that it only operates in 13 states and, in most of the those states, in only one or two locations."  *Id.* at 15.  Defendants reference Plaintiff's website, noting that "[o]f its 40 restaurants, the vast majority, 27, are located in the west coast states of California, Oregon and Washington, with one in Hawaii" and that the "remaining 13 restaurants are spread across 10 states, which have only one or two locations each."  According to Defendants, the "closest restaurant to New York [is] on the far southwestern border of Ohio, . . . some 600 miles away from The Spaghetti Factory in Verona Beach, New York."  *Id.*

In response, Plaintiff asserts that "Defendants exaggerated the degree of fame required." Dkt. No. 24 at 18.  Plaintiff argues that the authorities relied upon by Defendants are distinguishable and/or inapposite because, *inter alia*, "OSF is in the restaurant business having a large consumer base comprising everyone who eats" and that "[r]estaurant services are in the mainstream of public consciousness[.]"  *Id.* at 19.  Moreover, Plaintiff asserts that OSF's trademark registration conclusively shows that the Mark is distinctive.  *See id.* at 19-20. Notwithstanding the registration, Plaintiff argues that the Mark is "suggestive" or "fanciful" as it "requires imagination, thought and perception to reach a conclusion as to the nature of the services."  *Id.* at 20 (citations omitted).  Furthermore, Plaintiff asserts that Defendants are relying upon "obsolete law on eligibility for federal dilution protection" insofar as arguing that "a mark

must be inherently distinctive to qualify for dilution protection under the Lanham Act[,]" as that requirement has been "superseded" by the Trademark Dilution Revision Act of 2006. *Id.* at 17-18.

The amended complaint plausibly alleges that the Mark is famous and predates Defendants' commercial use, which allegedly risks diluting the Mark's quality and distinction in connection with Plaintiff's goods and services. Whether the Mark is sufficiently "famous" for purposes of 15 U.S.C. § 1125(c) protection, and whether Defendants are in fact diluting and/or diminishing its quality are issues that will require a more fully developed record to resolve. At this stage, Plaintiff has satisfied its pleading obligations.

As such, Defendants' motion to dismiss the Third Cause of Action is denied.

**D.    Unfair Competition – Fifth Cause of Action**

As referenced above, there is no specific federal cause of action for unfair competition. *Sussman-Automatic Corp.*, 15 F. Supp. 3d at 272 (citations omitted). However, under New York common law, "an unfair competition claim encompasses a broad range of unfair practices." *Carson Optical, Inc. v. Prym Consumer USA, Inc.*, 11 F. Supp. 3d 317, 328 (E.D.N.Y. 2014) (citing *American Footwear Corp. v. Gen'l Footwear Co.*, 609 F.2d 655, 662 (2d Cir. 1979)). The "essence of unfair competition under New York law is the bad faith misappropriation of the labors and expenditures of another, likely to cause confusion or to deceive purchasers as to the origin of the goods." *Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc.*, 58 F.3d 27, 34 (2d Cir. 1995) (internal quotations omitted). "Although the 'law of unfair competition in New York encompasses a broad range of practices,' . . . the tort 'is not all-encompassing.'" *Carson Optical, Inc.*, 202 F. Supp. 3d at 267 (internal quotations and citations omitted).

12

"New York common law recognizes 'two theories of common-law unfair competition: palming off and misappropriation.'" *Kid Car NY, LLC v. Kidmoto Technologies, LLC*, 518 F. Supp. 3d 740, 760 (S.D.N.Y. 2021) (quoting *ITC Ltd. v. Punchgini, Inc.*, 9 N.Y.3d 467, 476 (2007); *Bytemark, Inc. v. Xerox Corp.*, 342 F. Supp. 496, 505-06 (S.D.N.Y. 2018)). "Palming off" involves the "sale of goods of one manufacturer as those of another." *Id.* (citation and quotations omitted). "The second theory, misappropriation, prevents individuals from 'misappropriat[ing] the results of the skill, expenditures and labors of a competitor.'" *Carson Optical Inc.*, 202 F. Supp. 3d at 268 (quoting *Punchgini*, 9 N.Y.3d at 477). "'The elements of unfair competition under New York law closely parallel the elements of unfair competition under the Lanham Act.'" *Carson Optical, Inc. v. Prym Consumer USA, Inc.*, 11 F. Supp. 3d 317, 336 (E.D.N.Y. 2014) (quotation and other citation omitted). However, under New York law, "[a] claim for unfair competition requires the pleading of facts giving rise to a plausible inference that the defendant[] act[ed] in bad faith[.]" *LivePerson, Inc. v. 24/7 Customer, Inc.*, 83 F. Supp. 3d 501, 518 (S.D.N.Y. 2015) (citation omitted); *see also C=Holdings B.V. v. Asiarim Corporation*, 992 F. Supp. 2d 223, 244 (S.D.N.Y. 2013) ("An unfair competition claim under New York common law requires all the elements of a Lanham Act unfair competition claim plus a showing of bad faith") (citations omitted).

Defendants assert that the unfair competition claim is "unadorned" and "without citation to any statute." Dkt. No. 23-2 at 25. Defendants argue that the claim "is comprised of a single substantive paragraph alleging that the Defendant's trademark infringement constitutes 'misappropriate [sic] of the result of the Plaintiff's skill, expenditures and labor,' which it claims is actionable under 'the federal and state law of unfair competition." *Id.* at 25-26. Defendants contend that "because there is no separate common law claim for unfair competition beyond those

13

already covered by the Plaintiff's Lanham Act claims, and because the state law claim for unfair competition has additional elements of intent and bad faith that are not sufficiently plead [sic]," the claim must be dismissed. *Id.* at 26. As to the additional elements necessary under New York common law, Defendants argue that, *inter alia*, the "rote recitation of the words 'bad faith,' are insufficient to save the pleading." *Id.* at 29 (citation omitted).

In opposition, Plaintiff asserts that the "'Fifth Claim' states a claim for New York common law unfair competition." Dkt. No. 24 at 21. Plaintiff argues that the amended complaint alleges "bad faith" to the extent that "after OSF's trademark registration, JACS adopted and commenced use of THE SPAGHETTI FACTORY as a mark in commerce on its restaurant" and that Defendants "were on notice of Plaintiff's nationwide trademark rights at the time[.]" *Id.* Plaintiff asserts that Defendants "adopted the Mark in bad faith with the intent to deceive and mislead the public in a material respect." *Id.* In any event, Plaintiff argues that Defendants were "on constructive notice of OSF's nationwide trademark rights, and Defendants therefore cannot have adopted its mark in good faith." *Id.*

In this case, the amended complaint contains one substantive paragraph in support of the Fifth Cause of Action, which states: "Defendants' bad faith use of the infringing mark, name and domain name constitutes palming off of Defendants' goods and services as that of Plaintiff's, misappropriation of the results of Plaintiff's skill, expenditures and labor, and infringement of the Mark actionable under the federal and state laws of unfair competition." Dkt. No. 22 at ¶ 117. While the "Fifth Claim" incorporates "each and every allegation" contained in the preceding paragraphs, the only additional information provided is that Plaintiff "has been injured in an amount not yet ascertained, but exceeding $75,000" and that "Plaintiff has no adequate remedy at law for the foregoing violations." *Id.* at ¶¶ 116-119. Although there is no reference to any source

14

of authority for which the claim is based, Plaintiff asserts in its opposing memorandum of law that the "'Fifth Claim' states a claim for New York common law unfair competition."  Dkt. No. 24 at 21.

In drawing the inferences most favorable to Plaintiff as the non-moving party, the Court construes the amended complaint as attempting to allege unfair competition under New York common law.  However, the Court finds that Plaintiff has failed to adequately allege the additional bad faith element, as is required under New York law.  Plaintiff's arguments in this regard are that Defendants allegedly misappropriated the Mark because they were on "constructive notice" in light of Plaintiff's trademark registration.  But there are no allegations in the amended complaint — save for the conclusory use of the words "bad faith" — plausibly suggesting that Defendants actually knew of the Mark's existence, or that they intended to deceive consumers.   While Plaintiff may have plausibly alleged parallel claims under the Lanham Act, without a plausible showing of bad faith, there can be no claim under New York law.

Accordingly, Defendants' motion to dismiss Plaintiff's Fifth Cause of Action is granted.

**E.    New York General Business Law §§ 349 and 350 – Seventh Cause of Action**

New York General Business Law Section 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state." N.Y. Gen. Bus. L. § 349.  Additionally, Section 350 of the statute prohibits "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state." N.Y. Gen. Bus. L. § 350.  To state a claim under either section, a plaintiff must allege "'that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice.'"  *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015) (quoting *Koch v. Acker, Merrall & Condit Co.*, 18

N.Y. 3d 940, 940 (2012)).  In the context of a motion to dismiss, "[i]t is well settled that a court may determine as a matter of law that an allegedly deceptive advertisement would not have misled a reasonable consumer." *Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013) (citations omitted); *Goldemberg v. Johnson & Johnson Consumer Cos., Inc.*, 8 F. Supp. 3d 467, 478 (S.D.N.Y. 2014) ("A court may make this determination as a matter of law, although usually such a determination is a question of fact") (citing *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 25 (1995)).

"[C]ourts in New York have routinely dismissed trademark claims brought under Sections 349 and 350 as being outside the scope of the statutes, because ordinary trademark disputes do not 'pose a significant risk of harm to the public health or interest' and therefore are not the type of deceptive conduct that the statutes were designed to address." *Kaplan, Inc.*, 16 F. Supp. 3d at 352 (collecting cases).  Indeed, in the Second Circuit the prevailing view is that trademark infringement claims are not cognizable under N.Y. Gen. Bus. L. §§ 349 and 350 "'unless there is specific and substantial injury to the public interest over and above the ordinary trademark infringement.'" *Perfect Pearl Co., Inc. v. Majestic Pearl & Stone, Inc.*, 887 F. Supp. 2d 519, 543 (S.D.N.Y. 2012) (quotation and other citation omitted); *see also Shandong Shinho Food Industries Co., Ltd. v. May Flower International, Inc.*, 521 F. Supp. 3d 222, 263 (E.D.N.Y. 2021) (dismissing New York deceptive trade practice claim and noting that the "allegation that Defendants' conduct resulted in injury to consumers in the form of consumer confusion is insufficient to state a claim under NYGBL § 349") (citation omitted).

Generally, Defendants assert that "[f]ederal courts in New York have consistently held that conventional trademark infringement claims are not cognizable under N.Y. GBL § 349 'unless there is specific and substantial injury to the public interest over and above the ordinary

trademark infringement.'" Dkt. No. 23-2 at 20 (citation omitted).  Defendants argue that "[t]his

case is a run of the mill trademark infringement case, and the conclusory, lame allegations that the

trademark infringement is 'directed a[t] consumers' added to the Amended Complaint are

insufficient to rise this case to the level of consumer harm necessary to support a GBL §§ 349 and

350 claim." *Id.* at 22.  Defendants contend that "Plaintiff fails to identify harm to the general

public such that the statutes in question would apply, but rather, expresses concern solely for its

bottom line[.]" *Id.*

Plaintiff argues that the amended complaint adequately "alleges harm to the public

interest, namely harm to the interest of the public not to be confused as to the source of alcoholic

beverages[.]" Dkt. No. 24 at 22.  Plaintiff asserts that "[b]efore issuing a license to sell alcohol at

retail for consumption on premises, the State Liquor Authority must consider whether the public

interest will be promoted." *Id.* (citation omitted).  According to Plaintiff, Jason and Amanda

Spellicy "formed JACS to hold the liquor license for serving liquor to restaurant customers . . . on

the restaurant premises[;] . . . they are named principals on the liquor license and exercise control

over and profit from the sale of alcoholic beverages in the restaurant[,] . . . and JACS serves

alcoholic beverages that travel in interstate commerce[.]" *Id.* at 22-23 (citations omitted).

Plaintiff asserts that such allegations "are sufficient to establish harm to the public interest" in the

context of alleged confusion caused by Defendants' use of the Mark.  *Id.*

The Court finds that Plaintiff has failed to state a cause of action under New York General

Business Law §§ 349 and 350.  The Court finds Plaintiff's argument unpersuasive that the State's

public health and safety interest in regulating and controlling alcoholic beverages warrants relief

in the context of the alleged confusion caused by Defendants.  The allegations in the amended

complaint are simply too attenuated relative to any public health and welfare interests as there are

no allegations that consumers have been physically or otherwise harmed by Defendants' sale of liquor.  By all indications, this case amounts to an ordinary trademark dispute that courts have consistently found to fall outside the scope of New York's consumer protection statutes.  *See Perfect Pearl co., Inc. v. Pearl & Stone, Inc.*, 887 F. Supp. 2d 519, 542 (S.D.N.Y. 2012) (collecting cases and stating that "'[c]ourts routinely reject such attempts to fashion Section 349 and 350 claims from garden variety disputes between competitors'") (quotation and other citations omitted).

Accordingly, Defendants' motion to dismiss the Seventh Cause of Action is granted.

## F.    New York General Business Law § 360-l – Eighth Cause of Action

Similar to 15 U.S.C. § 1125(c), New York General Business Law § 360-l provides a cause of action for trademark dilution as to the source of goods or services; however, unlike federal law, the state statute protects "extremely strong marks," which may not necessarily be considered "famous." *ESPN, Inc. v. Quicksilver, Inc.*, 586 F. Supp. 2d 219, 228 (S.D.N.Y. 2008) (citations omitted); *see also Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*, 588 F.3d 97, 114 (2d Cir. 2009).  To prevail on a § 360-l claim, the plaintiff must demonstrate the following:

> "(1) that it possess[es] a strong mark, one which has a distinctive quality or has acquired a secondary meaning such that the trade name has become so associated in the public's mind with the [plaintiff] that it identifies goods sold by that entity as distinguished from goods sold by others, and (2) a likelihood of dilution by either blurring or tarnishment."

*Biosafe-One, Inc. v. Hawks*, 639 F. Supp. 2d 358, 367 (S.D.N.Y. 2009) (quoting *Matter of Fireman's Assn. of State of N.Y. v. French Am. School of N.Y.*, 41 A.D.3d 925, 928 (3d Dep't 2007)).  Dilution by "blurring" occurs where the "defendant uses or modifies the plaintiff's trademark to identify the defendant's goods and services, raising the possibility that the mark will lose its ability to serve as a unique identifier of the plaintiff's product." *Deere & Co. v. MTD*

18

*Products, Inc.*, 41 F.3d 39, 43 (2d Cir. 1994).  Conversely, "dilution by tarnishment 'arises when the plaintiff's trademark is linked to products of shoddy quality, or is portrayed in an unwholesome or unsavory context likely to evoke unflattering thoughts about the owner's product.'"  *Coty Inc. v. Excell Brands, LLC*, 277 F. Supp. 3d 425, 460 (S.D.N.Y. 2017) (quoting *Deere & Co.*, 41 F.3d at 43).

Defendants argue that "OSF's mark is not famous, or distinctive and, for purposes of New York law, it is not 'extremely strong.'"  Dkt. No. 23-2 at 19.  Defendants assert that the Mark "is inherently weak because it is merely descriptive" and that, notwithstanding, the Mark "cannot acquire[] secondary meaning in New York, where it does not have any restaurants and where its closest location is some 600 miles away from the alleged infringer's single location."  *Id.* at 19-20.  Moreover, Defendants argue that, insofar as Plaintiff claims that "a federal registration means that a trademark is presumptively 'extremely strong'" under New York law, "[t]here is no authority for [such] suggestion[.]"  Dkt. No. 25 at 6-7.  Notwithstanding, Defendants assert that the complaint "does not allege secondary meaning in any respect, [and] it unquestionably fails to allege that the trademark has secondary meaning in the relevant marketplace — New York State."  *Id.* at 7.  According to Defendants, "the New York statute, of its own accord, requires that the mark be proved to be extremely strong in New York."  *Id.*

Plaintiff asserts that the amended complaint adequately alleges that the Mark is "strong" for purposes of New York's dilution protection.  Dkt. No. 24 at 23.  Plaintiff alleges that "OSF's 50-year old federal trademark registration establishes strength conclusively" because "[a] registered trademark becomes incontestable if it has been in continuous use for five consecutive years subsequent to its registration and is still in use."  *Id.* (citations omitted).  Plaintiff argues that

"[t]here is no defense based on descriptiveness against an incontestable mark[.]" *Id.* at 23-24 (citation omitted).

Having considered the parties' arguments, the Court finds that the amended complaint sufficiently alleges a plausible trademark dilution claim under New York law. The Court has some pause in reaching this determination based on Defendants' argument that a mark must have "secondary meaning in the relevant marketplace[.]" Dkt. No. 25 at 8. The Court finds this argument persuasive on its face because the amended complaint does not allege that Plaintiff owns or operates any restaurants in New York State. *See* Dkt. No. 22 at ¶¶ 22, 24. However, neither party has adduced any conclusive authorities on this point. While Defendants are certainly permitted to make this argument again at a later stage in the litigation, based on the limited record and briefing on the current motion, because Plaintiff alleges that it has a strong mark plausibly at risk for dilution, the amended complaint adequately states a claim under N.Y. Gen. Bus. L. § 360-1.

Accordingly, Defendants' motion to dismiss the Eighth Cause of Action must be denied.

### IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the reasons set forth above, the Court hereby

**ORDERS** that Defendant's motion to dismiss (Dkt. No. 23) is **GRANTED** in part and **DENIED** in part; the Court further

**ORDERS** that Plaintiff's Second Cause of Action is **DISMISSED**, in part, insofar as it alleges a standalone claim for unjust enrichment under the Lanham Act; and the Court further

**ORDERS** that Plaintiff's Fifth Cause of Action for unfair competition under New York law is **DISMISSED**; and the Court further

**ORDERS** that Plaintiff's Seventh Cause of Action for violations of New York General Business Law §§ 349 and 350 is **DISMISSED**; and the Court further

**ORDERS** that all remaining claims set forth in the amended complaint (Dkt. No. 22) **SURVIVE**; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order upon all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: October 10, 2023
   Albany, New York

Mae A. D'Agostino
U.S. District Judge